```
____ FILED      ✓ LODGED
____ RECEIVED   ____ COPY

       SEP 0 6 2016

   CLERK U S DISTRICT COURT
     DISTRICT OF ARIZONA
BY _____ DEPUTY
```

JOHN S. LEONARDO
United States Attorney
District of Arizona

M. BRIDGET MINDER
Assistant U.S. Attorney
Arizona State Bar No. 023356
Email: mary.minder@usdoj.gov

PETER SEXTON
Assistant U.S. Attorney
Arizona State Bar No. 011089
Email: peter.sexton@usdoj.gov

Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Deborah Ann Weidenhamer,<br><br>　　　　Defendant. | CR-16-1072-PHX-ROS<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, Deborah Ann Weidenhamer, agree to dispose of this matter on the following terms and conditions:

**1.   PLEA**

The defendant will plead guilty to an Information charging the defendant with violations of 18 United States Code (U.S.C.) § 1344, Bank Fraud, a Class B felony offense.

**2.   MAXIMUM PENALTIES**

　　a.   A violation of 18 U.S.C. § 1344, is punishable by a maximum fine of $1,000,000, a maximum term of imprisonment of 30 years, or both, and a term of supervised release of five years.

b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a $700 special assessment for the counts to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

3. **STIPULATIONS REGARDING SENTENCING**

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that:

a. Loss Amount. The United States and the defendant stipulate that, under U.S.S.G. § 2B1.1, the loss from the defendant's unlawful conduct is $50,672,469.96.

b. Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay full restitution, but in no event more than $50,672,469.96, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

c. Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or

transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

4. **RECOMMENDATIONS REGARDING SENTENCING**

   a. Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offenses and related conduct, and if the defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

   b. Low End Sentence. In no event will the United States recommend a sentence greater than the low end of the applicable Sentencing Guidelines range. This recommendation does not preclude the defendant from asking for a sentence below the applicable Sentencing Guidelines range, or the government from recommending a lower sentence based upon additional factors learned during the sentencing process.

   c. Non-Binding Recommendations. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the

defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

### 5. AGREEMENT TO DISMISS OR NOT TO PROSECUTE

a. This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with the charges in the Information.

b. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

### 6. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

### 7. WAIVER OF DEFENSES AND APPEAL RIGHTS

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of

judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**8.    DISCLOSURE OF INFORMATION**

a.    The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.    Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.    The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)    criminal convictions, history of drug abuse, and mental illness; and

(2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**9.    FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a.    Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall

be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

**10. ELEMENTS**

**Bank Fraud (18 U.S.C. § 1344)**

From at least September 2013 through February 2016, in the District of Arizona:

1. The defendant knowingly executed a scheme to defraud a financial institution as to a material matter;
2. The defendant did so with the intent to defraud the financial institution; and
3. The financial institution was insured by the Federal Deposit Insurance Corporation.

**11. FACTUAL BASIS**

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

Deborah Ann Weidenhamer, a resident of Phoenix, Arizona, was the owner and Chief Executive Officer of Auction Systems Auctioneers and Appraisers, Inc., located at 951 West Watkins Street in Phoenix, Arizona. In early 2015, Auction Systems Auctioneers and Appraisers, Inc., changed its name to American Auction Company, Inc. (Auction Systems Auctioneers and Appraisers, Inc., and American Auction Company, Inc., are collectively referred to here as "American Auction.") Weidenhamer, through American Auction and other related entities, provided auction and appraisal services in the United States and internationally.

Weidenhamer promoted American Auction as a successful, growing company. In fact, American Auction had never turned a profit and lost money each and every year since at least 2009.

To cover American Auction's expenses and losses, Weidenhamer obtained a bank loan. The initial loan, obtained around 2001, was approximately $200,000. As Weidenhamer needed more money to cover the increasing expenses and losses of her business, she either increased the amount of the loan with her current lender or moved the loan to another lender that would extend more credit to her. By 2005, the loan had increased to more than $1,000,000. By 2008, the loan had increased to $10,000,000. By 2013, the loan had increased to $35,000,000. Between 2008 and 2013, Weidenhamer switched banks multiple times.

In the fall of 2013, Weidenhamer switched banks again. On or about September 20, 2013, Weidenhamer, on behalf of American Auction, obtained a $35,000,000 revolving loan from Johnson Bank (the "Loan"). (Johnson Bank and Comerica Bank later agreed to be equal partners in the Loan and are collectively referred to here as the "Lenders")

On September 20, 2013, Weidenhamer signed a loan agreement and various other agreements related to the Loan. (The loan agreement and other related agreements are collectively referred to here as the "Loan Documents")  In the Loan Documents, Weidenhamer represented and warranted, among other things, that:

- There was no fact known to Weidenhamer or American Auction that materially and adversely affected the business, assets, or condition (financial or otherwise) of American Auction which had not been disclosed to the Lenders. (Loan Agreement § 4.7)
- The financial statements and financial data previously delivered to the Lenders, relating to Weidenhamer and American Auction, were true, correct, and complete in all material respects, and fairly presented the financial position of Weidenhamer and American Auction. (Loan Agreement § 4.12)

Many of Weidenhamer's representations and warranties in the Loan Documents, including those listed immediately above, were false and fraudulent. Weidenhamer intentionally hid the true financial condition of American Auction from the Lenders in order to obtain the Loan.

Between May 14, 2014, and December 21, 2015, Weidenhamer and the Lenders agreed to modify the terms of the Loan on six occasions. Three of those modifications increased the amount of the Loan from $35,000,000 to $55,000,000.

With each modification, Weidenhamer represented and warranted, among other things, that there was no material adverse change in her financial condition or the financial condition of American Auction and that all representations and warranties in the Loan Documents were still accurate. (Modification Agreements § 4)

Many of Weidenhamer's representations and warranties in the loan modifications, including those listed immediately above, were false and fraudulent. Weidenhamer continued to hide the true financial condition of American Auction from the Lenders in order to modify and increase the amount of the Loan.

On or about January 25, 2016, consistent with their rights under the terms of the Loan, the Lenders conducted a field audit of American Auction. As part of the audit, the Lenders requested that Weidenhamer provide them certain information and documents. Weidenhamer was not able to, and did not, provide many of the documents requested by the Lenders. Weidenhamer also did not provide any substantive response to any of the Lenders' three Notices of Default, which were delivered to her on February 2, February 8, and February 11, 2016.

On February 11, 2016, the Lenders declared the Loan in default. At the time, the principle amount of the Loan was $52,443,703.06. After the Lenders collected the funds in American Auction's bank account at Johnson Bank and applied them to the Loan, the principle amount of the Loan that was still outstanding was $50,672.469.96.

After declaring the Loan in default, the Lenders discovered that Weidenhamer had misrepresented American Auction's financial condition and that she had created and

provided false and fraudulent financial statements and financial data, including financial statements, bank statements, and accounts receivable reports, to obtain the Loan and as part of her ongoing obligations under the terms of the Loan to provide financial information.

## COUNTS ONE THROUGH SEVEN

Between about September 2013 and February 2016, Defendant Deborah Ann Weidenhamer, individually and doing business under the entities described above, knowingly executed and attempted to execute a scheme or artifice to defraud Johnson Bank and Comerica Bank, financial institutions with accounts insured by the FDIC, to obtain money or property under the custody and control of Johnson Bank and Comerica Bank by means of materially false or fraudulent pretenses, representations, and promises.

Weidenhamer engaged in this conduct, in the District of Arizona and elsewhere, on or about the dates listed below, by making false and fraudulent representations and warranties regarding American Auction's financial condition, and by presenting to Johnson Bank and Comerica Bank false and fraudulent information and documents to obtain the Loan and to modify the terms of the Loan. Weidenhamer made such representations and warranties, and presented such information and documents, knowing them to be materially false and fraudulent, and with the intent to defraud Johnson Bank and Comerica Bank.

| Count | Date | Agreement | Loan Amount |
|---|---|---|---|
| 1 | September 20, 2013 | Loan Agreement | $35,000,000 |
| 2 | May 14, 2014 | First Modification Agreement | $40,000,000 |
| 3 | October 24, 2014 | Second Modification Agreement | $50,000,000 |
| 4 | February 16, 2015 | Third Modification Agreement | $50,000,000 |
| 5 | May 14, 2015 | Fourth Modification Agreement | $50,000,000 |
| 6 | October 20, 2015 | Fifth Modification Agreement | $55,000,000 |
| 7 | December 21, 2015 | Sixth Modification Agreement | $55,000,000 |

All in violation of Title 18, United States Code, Section 1344.

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon

such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

July 20, 2016
Date

DEBORAH ANN WEIDENHAMER
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No

assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

Date 7/20/2016

LEE STEIN
ANNE M. CHAPMAN
Attorneys for Defendant

### APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

JOHN S. LEONARDO
United States Attorney
District of Arizona

Date 9/6/2016

M. BRIDGET MINDER
PETER SEXTON
Assistant U.S. Attorneys

### ACCEPTANCE BY THE COURT

Date _____

United States District Judge

- 12 -