**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-01072-001-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Deborah Ann Weidenhamer, | |
| Defendant. | |

Defendant Deborah Ann Weidenhamer is serving an 84-month sentence after pleading guilty to bank fraud. Defendant believes she is entitled to compassionate release because of "two serious life-threatening conditions from which she is not expected to recover." (Doc. 64 at 1). According to the government, the Court must deny this request because Defendant did not exhaust her administrative remedies prior to seeking relief from the Court. The government likely is correct that Defendant should have administratively exhausted before filing her request but even if the Court overlooks that failure, Defendant is not entitled to release. Therefore, the motion will be denied.

## BACKGROUND

Sometime in July 2019 Defendant submitted a request for compassionate release to the warden of her facility. The warden received that request on July 19, 2019. On August 19, 2019, the warden issued a written denial. (Doc. 64-1 at 65). The warden concluded Defendant did not "meet the criteria" for compassionate release but stated Defendant could appeal the denial "through the Administrative Remedy Program." (Doc. 64-1 at 65).

Instead of pursuing such an appeal, Defendant filed her motion with the Court on August 29, 2019. The government responded that Defendant's motion "should be denied on procedural grounds because [Defendant] has not exhausted all of her administrative appeal rights." (Doc. 65 at 1). According to the government, Defendant filed a proper request for compassionate relief with the warden but, upon receiving the warden's denial, Defendant was required to pursue an administrative appeal. Defendant disagrees that she was required to pursue an administrative appeal after receiving the warden's denial. Instead, Defendant argues she was entitled to file a motion with the Court 30 days after the warden received her request, regardless of what action the warden took on that request.

Assuming the Court can reach the merits of Defendant's motion, she alleges she "suffers from two serious diseases from which she is not expected to recover." (Doc. 64 at 3). Those two "diseases" are an abdominal aortic aneurysm and "primary immunodeficiency disorders." Defendant complains she is not receiving adequate medical treatment and her situation presents "extraordinary and compelling reasons" to grant compassionate release. The government did not respond on the merits because it believed Defendant's alleged failure to exhaust her administrative remedies precludes reaching the merits of Defendant's request.

## ANALYSIS

In 2018, Congress amended 18 U.S.C. § 3582 to allow a convicted defendant to file a motion for compassionate release. Previously, that statute allowed only the Director of the Bureau of Prisons to file such a motion. *United States v. Shields*, No. 12-CR-00410-BLF-1, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019). In authorizing defendants to file motions on their own behalf, the statute imposed an administrative exhaustion requirement. As explained below, however, the precise contours of that requirement are not clear.

### A. Defendant Did Not Exhaust Her Administrative Remedies

The amended statute allows a defendant to file a motion for compassionate release upon the earlier of two dates. First, a defendant can file a motion "after the defendant has

fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." *Id.* Second, a defendant can file a motion upon "the lapse of 30 days from the receipt of [a defendant's request to bring a motion] by the warden of the defendant's facility." *Id.* Courts have recognized these two options impose a mandatory requirement that a defendant submit a request to the warden of her facility before filing in court. *See, e.g.*, *United States v. Solis*, No. CR 16-015-CG-MU, 2019 WL 2518452, at *2 (S.D. Ala. June 18, 2019) (denying request because defendant did not request compassionate release from Bureau of Prisons); *United States v. Dowlings*, No. CR413-171, 2019 WL 4803280, at *1 (S.D. Ga. Sept. 30, 2019). But courts have disagreed on what, if anything, a defendant must do beyond that initial request and before filing in court.

The disagreement appears to stem from the wording of the second option authorizing a defendant to file a motion in court upon "the lapse of 30 days from the receipt of [a defendant's request to bring a motion] by the warden of the defendant's facility." Courts have concluded this language allows a defendant to file a motion with the court if a defendant makes a request to the warden but the warden does not act on the request within 30 days of receiving it. *See, e.g.*, *United States v. Early*, No. 7:02-CR-10125-002, 2019 WL 4576281, at *1 (W.D. Va. Sept. 20, 2019) (defendant was entitled to file motion because warden did not act on request within 30 days). Courts have also concluded a defendant can file a motion with the court if the warden takes longer than 30 days to act on a request, even if the warden's denial is issued before the defendant files his motion in court. *See, e.g.*, *United States of America v. Gray*, No. 202CR00018JMSCMM13, 2019 WL 4572816, at *3 (S.D. Ind. Sept. 20, 2019) (defendant was entitled to file motion because warden denied request more than 30 days after receiving request). But there is very limited authority explaining the options for a defnedant who submits a request to the warden and the warden denies that request within 30 days.

There are two ways to read the statutory phrase "the lapse of 30 days." The first reading is that a "lapse of 30 days" refers simply to the passage of 30 days, regardless of

what happens in the interim. Under this reading, a warden would be given an initial opportunity to act on a request for compassionate release but a defendant would not be required to pursue an administrative appeal should the warden deny the request. Instead, a defendant would be allowed to file a motion in court 30 days after the warden received the request. Given that some defendants seeking compassionate release are doing so because of imminent death, Congress might have decided against requiring every defendant pursue a potentially lengthy administrative appeal process.

In at least two other districts, the government has adopted this first reading and argued a defendant need not do more than wait 30 days before proceeding to court. *United States v. Spears*, 98-cr-208 (D. Ore. Sept. 30, 2019) (filing by government); *United States v. Robinson*, 16-cr-5307 (W.D. Wash. July 8, 2019) (filing by government). And judges in the Western District of Washington and the Eastern District of Tennessee have agreed defendants are entitled to proceed to court once 30 days pass, regardless of any action taken by the wardens. *United States v. Robinson*, 2019 WL 2567356 (W.D. Wash. June 21, 2019) (staying case for exactly 30 days after date warden received her request); *United States v. York*, No. 3:11-CR-76, 2019 WL 3241166, at *5 (E.D. Tenn. July 18, 2019) (defendant entitled to file motion with court after warden denied request even though defendant did not pursue administrative appeal). But this reading urged by the government elsewhere and adopted in other courts is not the only possible reading.

The second way to read the language referencing a "lapse of 30 days" is that it applies only if the warden does not grant or deny the request during those 30 days. "Lapse" often carries with it a connotation of a failure to act. For example, Black's Law Dictionary defines "lapse" as "[t]he termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred." Black's Law Dictionary 885 (7th ed. 1999). Thus, "lapse of 30 days" might be referring to the situation of a warden receiving a request but not acting on that request within 30 days. This reading would allow a defendant to go directly to court if a warden is not responsive to a request but, if a warden *does* act within 30 days, the defendant would be required to pursue

an administrative appeal. At least one court appears to have adopted this view, albeit without explanation. *See, e.g.*, *United States v. Koch*, No. 201CR083JMHEBA2, 2019 WL 3837727, at *2 (E.D. Ky. Aug. 14, 2019) (noting statutory amendment "did not alter the requirement that prisoners must first exhaust administrative remedies before seeking judicial relief").

In sum, the statutory language is not clear. With two ways of reading the language, the Court must look to other sources of information for guidance on what the language means. *See Moran v. Screening Pros, LLC*, 923 F.3d 1208, 1215 (9th Cir. 2019) ("If the language is ambiguous, we look to canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent."). Looking to guidance by the agency involved in administration of the statute can be especially helpful. *Cf. Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir. 2008) (looking to interpretation promulgated by Bureau of Prisons in a Program Statement). Here, the Bureau of Prisons has provided guidance on the revised statute but that guidance merely restates the crucial statutory language without explanation.

Shortly after § 3582 was amended, the Bureau of Prisons issued a "Program Statement" regarding the "implementation" of the revised statute. Bureau of Prisons Program Statement 5050.50 (Jan. 17, 2019). That Program Statement explains the first step in obtaining compassionate release is for the defendant to make a request to the warden of her facility. *Id.* at § 571.61. If that request is denied, "the inmate will receive written notice and a statement of reasons for the denial." Upon receiving such a denial, "[t]he inmate may appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B)." *Id.* at § 571.63. The Program Statement then explains when an inmate can file a request with the court:

> [A]n inmate may file a request for a reduction in sentence with the sentencing court after receiving a BP-11 response [after a warden's denial] . . . or the lapse of 30 days from the receipt of such a request by the Warden of the inmate's facility, whichever is earlier.

The term "BP-11" refers to the form a defendant receives after completing the

administrative appeal process. 28 C.F.R. § 542.15(a). In other words, the only guidance provided by the Bureau of Prisons is that a defendant may proceed to court after exhausting the administrative process or upon "the lapse of 30 days from the receipt of [a defendant's] request by the Warden." Merely repeating the statutory language provides no indication whether a defendant must pursue an administrative appeal if the warden of her facility denies her request within 30 days.

With no helpful guidance from the Bureau of Prisons, another possibility is to look to "the language of related or similar statutes." *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013). The other statute that immediately comes to mind is the Prison Litigation Reform Act ("PLRA"). Pursuant to the PLRA, "a prisoner challenging prison conditions [must] exhaust available administrative remedies before filing suit." *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017). That exhaustion requirement "expresses Congress' preference for prison officials to have a fair chance to address matters internally before a prisoner may turn to the courts." *Id.* at 936; *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (noting PLRA was meant to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"). But the actual language of the PLRA is much clearer in terms of requiring administrative exhaustion before filing suit. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."). And without sufficiently similar language between the two statutes, the PLRA's preference for exhaustion is of little use here.

In the end, the statutory language is opaque, the parties have not pointed to evidence of congressional intent, and extrinsic aids of statutory interpretation provide little help. In these circumstances, the Court concludes the better reading is to require administrative exhaustion if a warden acts on a request within 30 days. The statute requires a defendant submit a request to her warden. If the warden acts on that request in a timely matter, it is appropriate to require a defendant to pursue an administrative appeal. That is consistent with the general preference that courts take advantage of agency expertise when possible

*Cf. Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (noting "prudential exhaustion" allows for exercise of "agency expertise . . . to generate a proper record"). But if a warden does not act in a timely manner—perhaps indicating that any administrative process would be futile—a defendant can go directly to court. Because the warden of Defendant's facility *did* act within 30 days, Defendant was required to pursue her administrative appeal options.[1] Defendant's failure to do so means her request should be denied on procedural grounds.

## B. Defendant Not Entitled to Relief on the Merits

Given the uncertainty surrounding the administrative exhaustion requirement Congress imposed, the Court will also consider whether Defendant would be entitled to relief if the Court could reach the merits. She is not.

Defendant is entitled to compassionate release only if "after considering the factors set forth in section 3553(a) . . . extraordinary and compelling reasons warrant" such a release "and that such a reduction [would be] consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Therefore, the Court begins with the factors of 18 U.S.C. § 3553(a).

The § 3553(a) "factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013). Here, Defendant was sentenced to 84 months' incarceration less than two years ago. That was substantially less than the guideline range of 97-121 months. Defendant's sentence was based on an elaborate fraudulent scheme that she operated for years. That

---

[1] Federal Rule of Civil Procedure 6 provides the method for computing "any time period . . . in any statute that does not specify a method for computing time." Section 3582 does not specify a method for computing time. Therefore, pursuant to Rule 6, the first day (July 19, 2019) is excluded. Counting each following day, the thirtieth day was August 18, 2019. Because August 18 was a Sunday, the 30-day period did not expire until the next day, August 19, 2019. The warden issued the denial on August 19, 2019.

- 7 -

scheme resulted in losses of fifty million dollars. At the time of Defendant's sentencing, the Court concluded these facts, together with all the other facts and circumstances of Defendant's life and criminal behavior, merited a significant sentence to impose substantial punishment and deterrence. The only alleged change since Defendant was sentenced involves her medical conditions. Thus, the § 3553(a) factors still support the lengthy term imposed but the Court must consider whether Defendant's medical conditions establish "extraordinary and compelling reasons" warranting her release.

The Sentencing Commission has issued commentary providing a definition of "extraordinary and compelling reasons." Courts have looked to that commentary for guidance on the meaning of the statutory phrase. *United States v. Handerhan*, No. 19-1904, 2019 WL 4898675, at *1 (3d Cir. Oct. 4, 2019) ("'Extraordinary and compelling reasons' are . . . defined by the commentary to policy statement U.S.S.G. § 1B1.13.").[2] Under that commentary, medical conditions qualify as "extraordinary and compelling reasons" only when they "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 n.1.

According to Defendant's motion, she "suffers from two serious diseases from which she is not expected to recover." (Doc. 64 at 3). Those two "diseases" are an abdominal aortic aneurysm and "primary immunodeficiency disorders." Defendant has not submitted sufficient evidence that either of these conditions "substantially diminishes" her ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt. n.4. To be faithful to the statutory language requiring "extraordinary and compelling reasons," it is not enough that Defendant suffers from two chronic conditions that she is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.[3] In light of the

---

[2] Courts disagree whether U.S.S.G. § 1B1.13 is applicable given that it was enacted prior to passage of the amended statute. *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) (noting the policy statement may not apply to an amended statute). But even assuming the policy statement is out of date, it provides some useful guidance on the likely meaning of "extraordinary and compelling reasons."

[3] Defendant believes she is not receiving adequate medical care for her chronic conditions. However, Defendant's motion states she has received medical care, including doctor's visits and prescription medicines. Defendant's disagreement with the type and amount of

§ 3553(a) factors and the record presented in Defendant's motion, Defendant has not established "extraordinary and compelling reasons" justify compassionate relief.

Accordingly,

**IT IS ORDERED** the Motion Requesting Compassionate Release (Doc. 64) is **DENIED**.

Dated this 8th day of November, 2019.

_____
Honorable Roslyn O. Silver
Senior United States District Judge

---

medical treatment provided by the Bureau of Prisons is not enough to establish her conditions cannot be accommodated while she is incarcerated.